Commonwealth *v.* Harold Roller, Appellant.

Argued September 30, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham and Whitmore, JJ.

*John Whitaker Lord, Jr.,* for appellant, cited: Pandolfo v. U. S., 286 Fed. 8; DeCamp v. U. S., 10 Fed. Red. (2nd series) 984; Feeney v. Young, 191 N. Y. App. Div., 501; 22 C. J. 912 (Sec. 1115).

*John H. Maurer,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee, cited: Wallace v. Pa. R. R. Co., 222 Pa. 556; Marcinkiewicz v. Kutawich, 87 Pa. Superior Ct. 260; Moncur v. Western Life Ins. Co., 269 Pa. 213; Boyne City v. Anderson, 146 Mich. 328.

OPINION BY GAWTHROP, J., November 20, 1930:

Defendant appeals from five sentences of imprisonment imposed on bills of indictment charging him with entering with intent to steal, and larceny. The cases were tried together in the court below and were argued together in this court. They raise but a single question which will be answered in one opinion. After defendant was arrested he confessed to the various burglaries that he had committed. His confession was taken and recorded by a talking motion picture machine and the record thus made, which was offered in evidence and admitted over the objection of defendant, was exhibited to the jury upon a screen. The question presented to us is whether it was proper to admit this evidence. This is the same and the only

question which was raised in the court below on the motion for a new trial. It was answered in the affirmative by the learned trial judge in a well considered opinion which so fully justifies the conclusion reached as to warrant our adopting considerable portions thereof. The question, which is a new one in this state, involves two subordinate questions, first, the general relevancy and admissibility of such evidence; and second, the adequacy of the authentication of the evidence offered.

As to the general relevancy and admissibility of such evidence it is a matter of common knowledge that motion pictures are no longer a novelty. They are constantly used for commercial and scientific purposes. The talking motion picture, or movietone, as it is technically known, results merely from an adaptation of the scientific processes used in producing phonographic records in order that words spoken, or sounds produced at the time of the taking of the picture, may be reproduced with the picture. The Commonwealth presented the testimony of expert witnesses respecting the method by which the talking motion pictures are made and produced and their reproductive accuracy upon the screen. From this evidence it appears that the movietone is, in the language of the court below, "in basic characteristics, no different, on the one hand, from ordinary photography, in regard to the visual picture reproduced, and, on the other hand, from phonographic records, in regard to the auditory recording of sound. The principles that underlie their admissibility into evidence, therefore, differ in no way from those governing the admissibility of still pictures and phonographic records." It would seem, therefore, that objections to the introduction of sound pictures to supplement, clarify and authenticate verbal testimony of witnesses must be based upon lack of authenticity of the particular picture which is offered in evi-

dence, rather than on the ground of the general unreliability of the process by which such pictures are produced. From time to time the courts have recognized new agencies for presenting evidential matters. The novelty of the talking motion picture is no reason for rejecting it if its accuracy and reliability, as aids in the determination of the truth, are established. In the words of the learned trial judge, "all knowledge purveys to the law, and from the domains of every art and science it draws the weapons by which it discovers truth and confounds error. The still photograph, X-ray, the dictograph, the finger print, the phonograph, the microscope, and even the bloodhound, have all been used and received by judicial tribunals in the proof of matters depending upon evidence; and, in all such cases, the preliminary investigation was directed to the proper authentication of the evidence, and not merely to the question whether imposture might be successful." In Moncur v. Western Life Indemnity Co., 269 Pa. 213, photostatic copies were admitted for comparison with admittedly genuine signatures. In C. & J. Elec. Ry. Co. v. Spence, 213 Ill. 220, and Miller v. Mintun, 73 Ark. 183, X-ray photographs taken by an expert were held admissible. In People v. Jennings, 252 Ill. 534, the use of photographs of finger prints discovered at the scene of the crime was permitted. In State v. Knight, 43 Nev. 131, enlarged diagrams, made by an expert, of the appearance of blood in various conditions through the microscope, were permitted to be used for the purpose of illuminating the witnesses' testimony. Telephone conversations have been freely received in evidence, upon a proper identification of the voice: Penna. Trust Co. v. Ghriest, 86 Pa. Superior Ct. 71. The dictograph has also been recognized as a legitimate agency for the discovery of truth: State v. Minneapolis Milk Co., 124 Minn. 34. Phonographic records have been received in evidence. See Boyne

City v. Anderson, 146 Mich. 328. See also 22 C. J. 766. These are but a few of the cases which indicate the receptive attitude of the law toward any reliable mechanism produced by scientific knowledge for the discovery or recording of facts. But few reported decisions dealing with the admissibility of motion pictures have come to our attention. In Pandolfo v. U. S., 286 Fed. Rep. 8, the trial court was sustained in refusing to admit a motion picture which the defendant offered to exhibit to the jury, the reviewing court stating that "the question of permitting the moving picture to be displayed before the jury was so far within the discretion of the court that while it might not have been error to have received it, it was not error to exclude it." In DeCamp v. U. S., 10 Fed. Rep., 2d Series, 984, an offer of evidence similar to that made in the Pandolfo case was rejected and the ruling was sustained by the Court of Appeals of the District of Columbia on the ground that it was for the trial court to determine whether the picture which was offered was sufficiently verified. In Feeney v. Young, 191 N. Y. App. Div. 501, which was a suit to recover damages for the public exhibition of a moving picture of a patient while being operated upon, the trial court rejected the picture on the ground that the evidence of eye-witnesses who had seen the production and identified the individual being operated upon in the picture as the plaintiff, was the best evidence. In Gibson v. Gunn, 206 N. Y. App. Div. 465, in a three to two decision, it was held to have been error to admit in evidence the motion picture of the plaintiff showing that prior to the accident resulting in the damages claimed, he was able to perform as a vaudeville actor despite the fact that he had an artificial leg. The decision was put upon the ground that the evidence was hearsay and incompetent. The reasoning in support of this conclusion seems to us to lose sight of the many

principles underlying the admission of photographs and evidence of that character. In order to make such evidence competent it must be shown that the picture is authentic; that it reproduces an exact portrayal of the events—the movements and the voice. When this appears to the satisfaction of the trial judge there would seem to be no sound reason to prevent its acceptance in evidence. As photographs and phonographic reproduction of sounds have been held to be admissible in evidence, there would seem to be no sound reason for refusing to accept a talking moving picture, which is but a combination of the two when it is shown to be accurate and reliable.

Upon the question whether the movietone which was offered in evidence was a true portrayal of the actions and words of defendant at the time it was taken, the Commonwealth offered abundant evidence to authenticate it, and there was no countervailing proof. It was made in the presence and under the direction of an expert who also saw the film projected before and during the trial. When asked, "Q. Does that or not actually represented what occurred?" he answered, "Yes, in every way." "Q. And the production that you saw, and the tones you heard here—did they correspond with your recollection of what took place when the picture was taken? A. Yes, sir." The operator of the camera and the sound man took the photograph synchronously and both agreed that the projected movietone comported exactly and truthfully with the scene and the voices actually taken. Defendant's expert, who testified that talking motion pictures are readily susceptible to fabrication, conceded, after making a thorough examination of the film, that there had been no elimination or insertions in the record, and that the projected film, in his judgment, accurately reproduced the scene taken. We conclude, therefore,

that the film was sufficiently authenticated to make it admissible in evidence.

The assignments of error are overruled and the judgment is affirmed.