## Commonwealth, Appellant, *v.* Hartman.

Argued April 13, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Edward Youngerman,* Asst. District Attorney, with him *Henry M. Koch,* District Attorney, for appellant.

*Joseph E. DeSantis,* with him *Clarence C. Mendelsohn,* for appellee.

OPINION BY HIRT, J., July 21, 1955:

The defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor. The Commonwealth has appealed from an order of the lower court granting a new trial.

The defendant was involved in an intersection accident in the City of Reading at 3:50 p.m. on January 14, 1954. Although it had stopped snowing and the temperature was above freezing, the streets were icy. Defendant's car skidded about 20 feet on the slippery pavement into another car approaching on the intersecting street. One of the police officers, who arrived at the scene immediately after the accident testified that he detected the odor of "beer or some alcoholic brew" on defendant's breath. A second police officer who examined defendant at the City Hall, where he had been taken after his arrest, testified that he detected a "moderate odor of alcohol" on the defendant. After questioning the defendant and subjecting him to a number of objective tests these officers concluded that defendant was a proper subject for the so-called "Forrester Intoximeter Test" to determine whether the alcohol content of his blood indicated that he was unfit for driving an automobile. The defendant consented to taking the test. The results of the test were admitted in evidence by the trial judge principally on the testimony of Dr. Clarence Muehlberger, a chemist and toxicologist who from a wide experience in the use of the Intoximeter stated that the result is reliable if the test is properly taken. There is nothing in this record questioning the procedure in administering the test in the present case nor the validity of the ultimate finding. A police officer who had adequate instruction in the use of the device administered the test and then delivered the cannister to C. P. Ludwig, a biochemistry technologist at St. Joseph's Hospital in Reading. He

was the same technologist who previously had prepared the device for the taking of a test. From an analysis based upon the amount of carbon dioxide picked up from the defendant's breath in a tube containing ascarite, and a quantitative determination of the alcohol entrapped in a tube containing magnesium perchlorate this witness testified that the alcoholic content of defendant's blood then was .20 percent.

The undisputed evidence is that a person with .15% or more alcohol in the blood is under the influence of intoxicating liquor. And the jury in this case were justified in finding from Dr. Muehlberger's testimony *that at the time when the intoximeter test was applied* the defendant's "mental and physical capabilities [were] impaired in those things which are necessary in the safe operation of a motor vehicle." We have no doubt as to the admissibility of the testimony based upon the Intoximeter test. In *Com. v. Harold Roller*, 100 Pa. Superior Ct. 125, we quoted the language of a distinguished Judge[1] to this effect: " 'all knowledge purveys to the law, and from the domains of every art and science it draws the weapons by which it discovers truth and confounds error. The still photograph, X-ray, the dictograph, the finger print, the phonograph, the microscope, and even the bloodhound, have all been used and received by judicial tribunals in the proof of matters depending upon evidence; and, in all such cases, the preliminary investigation was directed to the proper authentication of the evidence, and not merely to the question whether imposture might be successful.' " We have repeatedly adhered to the principle in accepting new and for the most part mechanical devices as aids in the search for truth and right answers

---

[1] The late JAMES GAY GORDON, JR., President Judge of Common Pleas Court Number 2 of Philadelphia.

to factual issues: Cf. *Com. v. Albright,* 101 Pa. Superior Ct. 317, 326; *Com. v. Clark,* 123 Pa. Superior Ct. 277, 285, 187 A. 237; *DeBattiste v. Laudadio & Son et al.,* 167 Pa. Superior Ct. 38, 42, 74 A. 2d 784.

The result of the test, resting as it does upon the testimony of Dr. Muehlberger, determined that the defendant was "under the influence" at 4:45 p.m. on the day in question, the time definitely fixed when he submitted to the test. But Dr. Muehlberger testified that before alcohol has an effect on the conduct of a person it must be absorbed into the blood stream; that the absorption is a gradual process, but the rate of absorption is influenced by a number of factors, among them the state of the taker's stomach as to food content, e.g., whether full or empty. With allowances for variable factors in different individuals and under a variety of circumstances Dr. Muehlberger testified that it takes from one-half to one and one-half hours from the time alcohol is consumed until it is absorbed into the blood stream. On the present record the court was of the opinion that since the Commonwealth did not produce any evidence of drinking prior to 3:00 p.m. "the results of the test would not be indicative of defendant's condition at [3:50 p.m.] the time he was arrested" under Dr. Muehlberger's testimony. The court recognized the admissibility of Intoximeter tests, generally, but concluded that for the above reason the test in this case was wholly inadmissible. Accordingly the verdict was set aside for a retrial of the case on other evidence of defendant's intoxication. Since the lower court granted a new trial for this single reason, raising a question wholly of law, the order was appealable by the Commonwealth. *Com. v. Bradley,* 109 Pa. Superior Ct. 294, 167 A. 471.

The only direct evidence as to the kind and quantity of intoxicants consumed by the defendant and the

time spent in drinking at the By-bar is in the testimony of the defendant himself and that of his companion. They both said that they arrived at the tavern after 3:00 p.m. where the defendant drank "two beers" and no more. The fact that the Commonwealth was not in position to prove that the defendant came to the tavern earlier in the day or that he consumed more than two beers while there was not controlling on the question of defendant's guilt. Defendant's credibility and that of his witness were for the jury and the weight ascribed to their testimony may have had a determining effect on the result. The opinions of the police officers who examined defendant at the City Hall immediately after the arrest, to the effect that in their opinion he then was intoxicated went to the credibility of defendant and his witness. And clearly defendant's condition within one hour after his arrest, as shown by the Intoximeter test on testimony which has not been questioned, was competent and relevant and was some evidence on the question of whether he was under the influence of intoxicating liquor while driving his automobile at the time of the collision. The weight of the evidence based on the test of course was for the jury.

We have examined the charge of the court in this case. It was entirely adequate. The testimony of the witnesses as to the Intoximeter test, and especially of Dr. Muehlberger, were reviewed in detail and the trial judge warned the jury: "It is, of course, important to know the condition of the defendant *at the time he was operating the vehicle.* If at that time there had not been sufficient absorption into the blood stream to make him under the influence, and if the result varied by that reason or would have varied, then, of course, you should accept the test with qualification." The rights of the defendant were given proper considera-

tion throughout in a charge free from error. The defendant did not except even generally to it. As in *Com. v. Bradley,* supra, there is merit in the Commonwealth's appeal in this case.

The order setting aside the verdict and granting a new trial is reversed; the verdict is reinstated and the record is remanded for the sentencing of defendant.

Ross, J., dissents.

---

DISSENTING OPINION BY ROSS, J.:

I am unable to agree with the majority that the grant of a new trial in this case should be reversed and, therefore, I dissent.

This is an appeal from an order granting a new trial in a criminal case after a jury conviction of the defendant-appellee. The appeal raises two questions: (1) Did the trial court abuse its discretion in granting a new trial—*the* question that is always involved when there is appellate review of such action by the court below, whether in a civil or criminal action, and (2) Does the Commonwealth have the right to appeal from the order granting a new trial in this case? Clearly if *either* of these questions should be answered in the negative, the order must be affirmed. In my opinion, *both* should be so answered.

I do not agree with the majority or with the learned court below that the result of an intoximeter test is admissible as proof that the testee was under the influence of liquor. In my opinion, before results of such tests are admissible, the legislature—and not the courts—should say so. However, that is beside the point and not involved in this appeal. The trial court held that such tests are admissible under proper circumstances but that they were improperly admitted in evidence under the circumstances in this case and, for that reason, granted a new trial.

I agree with the learned court below that the results of the test should not have been received in evidence in the instant case because of the time lapse between the accident and administering of the tests. Admittedly it was incumbent upon the Commonwealth to show that the defendant was under the influence of liquor at the time he was operating the motor vehicle, which in this case was no later than the time of the accident, 3:50 p.m. The test was given 55 minutes later, at 4:45 p.m. The majority opinion recognizes that the results of the test *indicate only that at 4:45 p.m., when the test was administered, the defendant had an alcoholic content in his blood of .20 per cent.* Admittedly .15 per cent. or more would indicate that the person was under the influence of intoxicating liquor.

The Commonwealth's expert witness testified that a person was unaffected by alcohol until it was absorbed into the blood stream and that it takes from 30 minutes to 1½ hours for the alcohol to pass through the digestive processes into the blood stream, measured from the time the alcohol is first consumed. In addition, the expert testified that the rate of absorption is dependent upon many other factors, such as the amount of food in the stomach, the particular tolerance of the individual drinker, etc. When he was asked "Q. At what rate does the blood absorb the alcohol? Is there any particular rate?" he answered, "No, it is over a length of time. If you give a person who has had no liquor a considerable size drink, in just a few minutes you can detect alcohol in his blood, within the first couple minutes." Further: "Q. But you can't fix the specific rate of absorption? A. No, it varies in different people. Some people are slow and some are fast."

This would indicate that even the expert witness could not say that because the content was .20 per cent.

at 4:45 p.m. that at 3:50 p.m. the content was at least .15 per cent. If the rate of absorption cannot be established, how can anyone say that at a certain prior time as remote as 55 minutes, the alcohol content was a certain percentage? Especially is this true where the absorption is dependent on so many factors which were not established upon the record here. That the fact that at 4:45 there was a .20 per cent. alcohol content would indicate that at 3:50 p.m. there was at least .15 per cent. alcohol content is pure conjecture and is not supported by any evidence which the jury could weigh in determining the effect of this evidence. Until some connecting rate or some other circumstantial evidence was introduced to show that the .20 per cent. figure at a certain time would indicate a .15 per cent. figure at the time of the accident, it would seem that the .20 figure stands alone as an isolated indication only of the alcohol content at the time the test was given. It is, therefore, my opinion that the lower court did not abuse its discretion in granting a new trial on the ground that this evidence should have been excluded.

As I view it, the really important question in this case is whether the Commonwealth has the right of appeal. "Under the common law the commonwealth had no right to appeal in a criminal case unless the appeal was from an order . . . sustaining a demurrer, or in arrest of judgment. Our statute of May 19, 1874, P. L. 219, §1, 19 PS §1188, as amended by the Act of May 19, 1897, P. L. 67, §22, 12 PS §1161, provides for the taking of appeals by the commonwealth in criminal cases charging 'nuisance or forcible entry and detainer, or forcible detainer'. It was said in Commonwealth v. Wallace, 114 Pa. 405, 411, 6 A. 685: 'But for error in quashing an indictment, arresting judgment after verdict of guilty, and the like, the Commonwealth may

remove the record for review without special allowance of the proper writ.' . . . In other words, if the ruling is against the commonwealth on a pure question of law it may appeal: Commonwealth v. Simpson, 310 Pa. 380, 383, 165 A. 498." *Com. v. Dellcese,* 155 Pa. Superior Ct. 120, 122, 38 A. 2d 494.

The majority opinion concludes that the order granting a new trial raised "a question wholly of law" and consequently the order was appealable by the Commonwealth, citing *Com. v. Bradley,* 109 Pa. Superior Ct. 294, 167 A. 471. In that case, this Court on appeal by the Commonwealth reversed the granting of a new trial. The sole question before the Court there was whether or not a confession of the defendant in a perjury charge was sufficient corroboration of another witness to the falsity of the matter which was perjured. It was not a question of what the confession contained as a matter of fact, but solely whether *as a matter of law* a confession was sufficient to corroborate the other witness to the perjury. In the instant case, the lower court granted a new trial because *as a matter of fact* there was nothing to connect the results of the test with the condition of the defendant at the time of the accident. The court below did not determine that as a matter of law the test was inadmissible, but rather while recognizing the reliability and authenticity of the test, concluded that there was no *factual* relation of it to the issue of intoxication at the time of the accident. In my opinion, the cases are clearly distinguishable.

The difficulty in determining what is a matter of fact and what is a matter of law is, of course, obvious and in many cases the decision rests on both the determination of fact and of law. The rule is clear, however, that the Commonwealth may appeal from an adverse ruling only where it is a "pure" question of law.

In the *Dellcese* case, supra, 155 Pa. Superior Ct. 120, 38 A. 2d 494, the lower court granted a new trial because the charge of the court was inadequate on the question of the degree of negligence on a manslaughter charge. This Court concluded that the granting of a new trial on that basis was not appealable by the Commonwealth as a "pure" question of law but rather a matter of discretion as to whether the new trial should be granted. The rule which requires that the matter involve a "pure" question of law was not meant to extend the right of the Commonwealth to appeal where the question involved *some* issue of law. For example, in *Com. v. Cohen,* 142 Pa. Superior Ct. 199, 15 A. 2d 730, an appeal from the sustaining of a demurrer to the indictment was allowed; in *Com. v. Reitz,* 156 Pa. Superior Ct. 122, 39 A. 2d 522, an appeal was allowed where the question involved the constitutionality of the act underlying the indictment; and *Com. v. Kolsky,* 100 Pa. Superior Ct. 596, where an appeal was allowed from the sustaining of a demurrer raising the "pure" legal question of the sufficiency of the evidence to support the crime charged. But in *Com. v. Supansic,* 93 Pa. Superior Ct. 111, an appeal was refused the Commonwealth where the new trial was granted because certain occurrences at another similar trial at about the same time might have had a prejudicial influence upon the jury.

The Commonwealth states that the issue is whether it was error for the lower court to determine that the results of the intoximeter test were improperly admitted as corroborative of the other evidence—in other words, an issue on the admissibility of the evidence. That issue, decided adversely to the Commonwealth, furnishes no basis for an appeal by it. In *Com. v. Wallace,* supra, 114 Pa. 405, 411, 6 A. 685, it is said: "To erroneous decisions made in the trial which may

cause the acquittal of the accused, except in the three misdemeanors already mentioned [nuisance, forcible entry and detainer and forcible detainer], the Commonwealth cannot except, and such decisions cannot be reviewed." In *Com. v. Frank*, 159 Pa. Superior Ct. 271, 48 A. 2d 10, this Court held that although the Commonwealth may appeal from the sustaining of a demurrer to the indictment or to the evidence if the sole issue is the sufficiency of the evidence to support the charge, *the Commonwealth cannot appeal from the sustaining of a demurrer to the evidence when the issue was really the error, if any, in the trial court's exclusion of much of the Commonwealth's evidence tending to prove the crime,* the reasoning being that the admissibility or exclusion of the evidence is not a proper issue upon which the Commonwealth can base an appeal. If the Commonwealth cannot appeal from the exclusion of evidence at the trial, nor from the sustaining of a demurrer where evidence was excluded, it follows that it cannot here appeal from the granting of a new trial on the basis that evidence should have been excluded.

I would, therefore, quash the appeal and affirm the order granting a new trial.