Commonwealth *v.* Mummert, Appellant.

Argued March 26, 1957.  Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*James P. Coho,* for appellant.

*Richard M. Martin,* Assistant District Attorney, with him *William C. Storb,* District Attorney, for appellee.

OPINION BY WATKINS, J., June 11, 1957:

R. H. Mummert, was indicted for operating a motor vehicle while under the influence of intoxicating liquor and was convicted by a jury. The lower court refused a motion for a new trial. The defendant was sentenced to pay a fine of $200 and costs of prosecution. This appeal followed.

This prosecution grew out of a vehicular accident that occurred on November 24, 1955 between 2:30 and 3:00 p.m., in the City of Lancaster. The defendant's truck collided with the car of Ray Albright. Albright got out of his car and went to the truck of the defendant to learn the cause of the accident, his identity and other pertinent information, but found the defendant incapable of carrying on a conversation. The defendant mumbled incoherently and appeared to be in a stupor and was very confused; merely shook his head to questions asked. Albright detected the odor of alcohol on his breath. He secured the information concerning the defendant from the license plate on the truck and some printing on the door of defendant's vehicle. Before the police could be notified the defendant, without warning, left the scene of the accident, and as observed by Albright, weaved as he drove down the street. The police were notified and found the defendant at his home at 4:05 p.m. He was lying across a bed fully clothed. He was hardly able to stand when

aroused and had to be assisted in order to walk. The police gave him the usual intoxication tests. This took place at about 4:20 p.m., and consisted of smelling defendant's breath, which had a strong odor of alcohol; having the defendant walk a straight line and other simple exercises. He was described as having blood shot eyes, staggering as he walked and several times nearly falling over. He admitted that he had been drinking, having started at 1:30 p.m., and having his last drink about 3:30 p.m. At 4:45 p.m., the defendant voluntarily submitted to a drunkometer test. The test showed a blood alcohol percentage of .230 or 23/100 of 1% alcohol and that he was under the influence of intoxicating liquor according to the standards prescribed by this test. He admits that he was under the influence of alcohol at 4:45 p.m., when he was given the drunkometer test but denies he was under the influence of alcohol at the time of the accident.

Defendant's appeal from the refusal of the court below to grant a new trial raises 7 questions. We shall consolidate the questions raised and discuss them in three parts for the purpose of this opinion.

Defendant's contention that the court below erred in refusing to sustain defendant's demurrer at the close of the Commonwealth's case is without merit, for in deciding the propriety of overruling a demurrer, all the facts which the evidence tends to prove and inferences reasonably deducible therefrom, are admitted. *Com. v. Waters*, 148 Pa. Superior Ct. 473, 25 A. 2d 756 (1942). The burden of the Commonwealth as to sufficient evidence of intoxication is clearly set forth in the case of *Com. v. Buoy*, 128 Pa. Superior Ct. 264 (1937), where Judge RHODES states at page 267: "The expression, 'under the influence of intoxicating liquor,' covers not only the well known and easily recognized conditions and degrees of intoxication, but any abnor-

mal, mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive one of that clearness of intellect and control of himself which he would otherwise possess." In the instant case there was sufficient evidence as credited by the jury, to warrant it in coming to a conclusion beyond a reasonable doubt that the defendant is guilty as charged. *Com. v. DePetro,* 350 Pa. 567, 39 A. 2d 838 (1944).

The contention of the defendant that he has been deprived of protection under the 14th Amendment of the Constitution of the United States of America by the trial court allowing the jury to consider drunkometer evidence need not be discussed at length. The defendant waived any immunity when he voluntarily agreed to submit to the test and readily admits being intoxicated at the time the test was given and this is well covered in the charge of the lower court.

The court below charged the jury that a drunkometer test is a legal test under the laws of the Commonwealth of Pennsylvania and the defendant raises the question of the legality of the drunkometer test and claims this as an error together with the admission of all related testimony. This test consisted of having the defendant blow up a balloon which had not been used before, then allowing the breath so taken to be run through a glass rod, bubbling it slowly in a reagent which is used to trap the amount of alcohol in the breath. This reagent contained a preparation of liquid consisting of sulphuric acid to which is added potassium permanganate. The sulphuric acid is supplied in a sealed vial by the manufacturer and the potassium permanganate is added to the sulphuric acid solution by the operator of the device. The alcohol in the breath of the one taking the test causes the solution to change color. The breath after bubbling through

the chemical solution passes into a container known as the gasometer which then measures the volume of breath by displacement of water. Upon completion of this process the operator then determines the percentage of alcohol in the blood stream of the person being tested at the time the test was administered by referring to a prepared chart. After determining the amount of alcohol in the blood stream of the person being tested, reference is made to a chart of accepted standards concerning the effect of alcohol within the body of a human being upon which it is determined whether the one taking the test was capable of operating a motor vehicle and whether to prosecute the case. The courts of the Commonwealth of Pennsylvania have relied upon devices prepared by science in assisting them in arriving at reliable conclusions. These devices have been aimed at removing the necessity for having a large number of experts at hand to make determinations in order to arrive at the same conclusion. As appears from our research the device in question has been widely accepted in other jurisdictions and its reliability has been shown repeatedly. *People v. Bobczyk*, 343 Ill. App. 504, 99 N.E. 2d 567 (1951); *Hill v. State*, 158 Texas Cr. Rep. 313, 256 S.W. 2d 93 (1953); *Toms v. State*, 95 Okla. Cr. Rep. 60, 239 P. 2d 812 (1952); *Willennar v. State*, 228 Ind. 248, 91 N.E. 2d 178 (1950). The drunkometer in 1952 was in use in 38 States and as of 1955, 23 States had adopted statutes concerning the use of the results of chemical tests in evidence as proof of intoxication. The generally accepted standards concerning the effect of alcohol within the body now utilized by courts in nearly all states are those of the National Safety Council, submitted by the 1940 Report of the Committee on tests for intoxication, Gray's Attorney's Text Book of Medicine, 3d Edition, Section 59.03.

These standards based upon concentration of alcohol within the blood are the standards recommended by the manufacturer of the drunkometer.

In this case the admission by the defendant that he was intoxicated at the time of the test corroborated the result arrived at by use of this device and indicates its reliability.

In *Com. v. Hartman,* 179 Pa. Superior Ct. 134, 115 A. 2d 820 (1955), 383 Pa. 461, 119 A. 2d 211 (1955), the case involved the use of a device known as an intoximeter. An intoximeter is a machine that measures the concentration of alcohol in the blood by breath sampling, and is, therefore, a similar device to the drunkometer. This Court decided that testimony based on the intoximeter test was admissible. Judge HIRT stated at page 137: "We have no doubt as to the admissibility of the testimony based upon the Intoximeter test. In Com. v. Harold Roller, 100 Pa. Superior Ct. 125, we quoted the language of a distinguished Judge to this effect: ' "All knowledge purveys to the law, and from the domains of every art and science it draws the weapons by which it discovers truth and confounds error. The still photograph, X-ray, the dictograph, the finger print, the phonograph, the microscope, and even the bloodhound, have all been used and received by judicial tribunals in the proof of matters depending upon evidence; and, in all such cases, the preliminary investigation was directed to the proper authentication of the evidence, and not merely to the question whether imposture might be successful" '. We have repeatedly adhered to the principle in accepting new and for the most part mechanical devices as aids in the search for truth and right answers to factual issues." Although the Supreme Court of Pennsylvania reversed this Court in *Com. v. Hartman,* supra, the decision of the Supreme Court was based on the grounds that the Common-

wealth had no right of appeal from the order of the lower court granting a new trial and was not based on error in the admission of evidence of the chemical test for intoxication, so that the *Hartman* case is authority for the admissibility of evidence of a chemical test as proof of intoxication and is applicable to the case at hand.

The court below discussed at length in its charge, the manner in which the evidence of the drunkometer test shall be treated by the jury and the factors which would enter into the consideration of all such testimony, in which he was eminently fair to the cause of the defendant. Were all the evidence regarding the drunkometer test disregarded there is sufficient evidence to sustain the verdict. Therefore, this contention, by the defendant, cannot be sustained.

Judgment affirmed.