Commonwealth, Appellant, *v.* Zeger.

Argued September 12, 1960. Before GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ. (RHODES, P. J., absent).

*Jay L. Benedict*, District Attorney, for Commonwealth, appellant.

*Samuel H. Jubelirer*, with him *Paul F. Mower*, and *Jubelirer and Carothers*, for appellee.

OPINION BY WATKINS, J., November 16, 1960:

This is an appeal by the Commonwealth from an order of the Court of Quarter Sessions of Franklin County, awarding a new trial to the defendant-appellee, Lawrence C. Zeger, after his conviction for violation of the Act of April 6, 1939, P. L. 16, §1, 25 PS §2374, commonly called the "ANTI-MACING" act.

The Act in question reads as follows: "It shall be unlawful for any political committee or any member,

employe or agent thereof, or for any public officer or employe, or any other person whatsoever, directly or indirectly, to demand from any public officer, subordinate or employe holding any office or position of honor, trust or profit under this Commonwealth, or otherwise engaged or employed in the service of the Commonwealth, or employed by, or in any way engaged in the service of, any political subdivision, or from any person receiving any public assistance whatsoever from the Commonwealth or the United States, directly or through employment on public works, or any person, association or corporation desiring or having a contract with, or a certificate, license or permit from, the Commonwealth or any political subdivision, any assessment or percentage of any money or profit, or their equivalent in any thing of value, with the understanding, express or implied, that the same may be used or shall be used for political purposes: Provided, however, That nothing in this act contained shall be construed to prohibit voluntary contributions to any political committee or organization for legitimate political and campaign purposes to the extent such contributions are not prohibited by law."

Five individuals, all employes of the Samuel G. Dixon State Hospital, a state institution for the treatment of tuberculosis, located at Mt. Alto, Pa., in various minor positions, testified to the receipt of a letter from the defendant, the Democratic County Chairman of Franklin County, which read as follows:

"To Employees:

"Enclosed please find a 1959 application blank for employment, which we request you to fill out and complete and bring it with you to the Volunteer Fire Hall, South Mountain, Pa., for a personal interview on Wednesday, Feb. 25, 1959, at 7:30 p.m.

"Your failure to cooperate in this matter will be deemed by the Executive Committee as intention on

your part to discontinue your employment. Greatly increased unemployment in this area makes it necessary to re-evaluate job positions and secure capable personnel. Therefore, please keep the above appointment without fail."

Accompanying this letter was a form called "Application for Employment", showing at the upper left corner, "County of Franklin—1959"; and in the upper right-hand corner, "Return to Franklin County Democratic Headquarters, 75 North Main Street, Chambersburg". The remainder of the application blank calls for a detailed statement of the name, residence, age, educational qualifications, previous employment, his party affiliation, political activities, and a pledge to obtain Democratic registrations.

They further testified that in response to the letter they appeared at the Fire Hall at which time they were interviewed by the defendant in the presence of two other men, apparently members of the Democratic Executive Committee. They testified that they were instructed by the defendant to contribute monthly sums, ranging from $5 to $9 respectively, to the Democratic County Committee. There was also testimony that envelopes were supplied to them to make such payments and that they were also to secure Democratic registrations. They were told by the defendant that many people were applying for their positions. However, no contributions were ever made by any of them and none of them was discharged.

The defendant denied that he had mentioned sums of money to the witnesses or threatened their jobs in any way but that he told them they could make voluntary contributions as the party needed money for political purposes. The two witnesses who were present at the interview supported his story that no demand of any kind for money had been made. During the

trial the defendant offered to call witnesses to prove his reputation as a law abiding citizen, which testimony was properly excluded by the court below. However, the defendant then offered to prove his reputation for truth and veracity and this evidence was also excluded. The jury convicted the defendant on all five counts of the indictment and on his motion in arrest of judgment and for a new trial the court below dismissed the motion in arrest of judgment but granted the motion for a new trial for the following reason: "In criminal cases, evidence of character, or truth and veracity, that is, the credibility of the witness, or a defendant, is generally relevant; limiting, however, such relevancy to the general reputation of a defendant with respect to the particular offense charged. (Henry's Pennsylvania Evidence, Volume 1, Section 159, page 197). Since the phraseology of the Act, and the conduct of the defendant under the particular circumstances outlined, occurring before and at the time of appearance at the Volunteer Fire Hall, involve the credibility of the defendant, this testimony of reputation as a truthful person, would be admissible, and would have some substantive force."

The first question to be determined is whether the Commonwealth had the right to appeal from an order granting a new trial to this defendant. The general rule that has emerged from the multitude of cases involving this question seems to be well and succinctly stated by Judge BALDRIGE, in *Com. v. Dellcese*, 155 Pa. Superior Ct. 120, 122, 38 A. 2d 494 (1944). "Under the common law the commonwealth had no right to appeal in a criminal case unless the appeal was from an order sustaining a motion to quash an indictment, sustaining a demurrer, or in arrest of judgment. Our statute of May 19, 1874, P. L. 219, §1, 19 PS §1188, as amended by the Act of May 19, 1897, P. L. 67, §22,

12 PS §1161, provides for the taking of appeals by the commonwealth in criminal cases charging 'nuisance or forcible entry and detainer, or forcible detainer'. It was said in Commonwealth v. Wallace, 114 Pa. 405, 411, 6 A. 685: 'But for error in quashing an indictment, arresting judgment after verdict of guilty, and the like, the Commonwealth may remove the record for review without special allowance of the proper writ'. In other words, if the ruling is against the commonwealth on a pure question of law it may appeal. Commonwealth v. Simpson, 310 Pa. 380, 383, 165 A. 498."

The Commonwealth asserts its right to take this appeal on the ground that it involves a question of law only and comes within the purview of the words "and the like". In *Com. v. Supansic*, 93 Pa. Superior Ct. 111, at page 115, this Court said: "It cannot properly be said that an order granting a new trial is, as a general proposition, kindred to one quashing an indictment or arresting judgment. Whether an indictment should be quashed or a judgment arrested is not a matter involving the exercise of judicial discretion and to be determined 'in accordance with what is fair, equitable and wholesome, as determined by the peculiar circumstances of the case, and . . . guided by the spirit, principles and analogies of the law' (Gaar, Scott and Co. v. Nelson, 148 S.W. 417), but requires the strict application of fixed principles of law to the issues properly before the court. Issues of fact, touching the guilt or innocence of the defendant, are not involved; in one case the judgment is a final judgment that as a matter of law the defendant is not required to plead and in the other that although found guilty he must be discharged because of some defect appearing upon the face of the record. For a mistake of law in entering either of these judgments against it the Commonwealth has the right to appeal. When we consider

the variety of grounds upon which new trials have been and may be ordered we are not prepared to hold that the Commonwealth can never appeal from such an order, but we are of opinion that there is no warrant in any statute or controlling decision for this appeal and that it should therefore be dismissed.".

It is true, therefore, that there is no rule of law that the Commonwealth may not appeal from an order granting a new trial, but from the language of the *Supansic* case, supra, and the case law, where the question has been discussed it is indicated that where the question of the Commonwealth's appeal is from the grant of a new trial, where the trial court has wide discretion and the appellate court is warranted in reversing only where there has been a clear abuse of discretion, and as the grant of a new trial is not a final judgment that works the discharge of the defendant, (*Commonwealth v. Simpson,* 310 Pa. 380, 383, 165 A. 498), the "pure question of law", admittedly difficult of determination, that would place such an order within the "and the like" rule, must be strictly applied and where any doubt arises it should be resolved against the Commonwealth. "The rule which requires that the matter involve a 'pure' question of law was not meant to extend the right of the Commonwealth to appeal where the question involved some issue of law." *Com. v. Hartman,* 179 Pa. Superior Ct. 134, 144, 115 A. 2d 820 (1955).[1] We believe, therefore, that the exclusion of the testimony as to this defendant's reputation as to truth and veracity where his credibility was in issue and where the charge of the court was to the effect that it was for the jury to determine the credi-

---

[1] Dissenting opinion of the late Judge Ross in *Com. v. Hartman,* 179 Pa. Superior Ct. 134, 115 A. 2d 820, reversed by the Supreme Court in *Com. v. Hartman,* 383 Pa. 461, 119 A. 2d 211. See discussion, 18 Pittsburgh Law Review, page 242.

bility of the witnesses of the Commonwealth and the defendant, in determining his guilt or innocence, involves an admixture of law and fact and the Commonwealth is not entitled to appeal. *Com. v. Hartman,* 383 Pa. 461, 119 A. 2d 211 (1956). "At most, appeals by the Commonwealth are sanctioned only when the ruling is against the Commonwealth on pure questions of law and no issues of fact are involved." *Com. v. Dolan,* 155 Pa. Superior Ct. 453, 455, 38 A. 2d 497 (1944).

As this case will be retried it is necessary to determine whether the court below abused its discretion in granting a new trial on the ground that the court committed error in excluding testimony offered on the part of the defendant to show his reputation for truth and veracity. Reputation evidence as proof of good character, generally, or a trait or a group of traits of good character of a defendant in a criminal case, if relevant, is admissible as an exception to the hearsay rule. The test is whether such evidence of good character is relevant. Evidence of good character is always relevant and admissible for the defendant in a criminal case where it becomes substantive evidence that may tend to rebut the Commonwealth's burden of proof of essential mens rea. But its relevancy may be limited to the particular trait or traits of character involved in the commission of the crime charged. *Com. v. Stefanowicz,* 118 Pa. Superior Ct. 79, 179 A. 770 (1935).

We held in *Com. v. Cohen,* 103 Pa. Superior Ct. 496, 157 A. 216 (1931), where the defendant was charged with giving false or insufficient weight in the retail sale of anthracite coal, that the court properly excluded evidence offered as to his "good character and general reputation". We there said: "Moreover, it is not clear that appellant was entitled to give evi-

dence of his previous good reputation. Where the intent with which the act charged was done is of the essence of the issue such evidence is admissible. The Commonwealth was not required, under this statute, to show guilty knowledge and criminal intent in the commission of the act declared therein to be a penal offense; this seems to have been the ground for the ruling. Nor was the offer sufficiently specific; it was to show merely appellant's 'general business reputation'. Evidence of this kind should be directed and limited to that particular trait of character which would indicate the improbability that defendant would commit the offense charged—here, for instance, honesty." The evidence offered was irrelevant and therefore inadmissible.

Similarly we said in *Com. v. Knox*, 172 Pa. Superior Ct. 510, 94 A. 2d 128 (1953), "By the same token, evidence of good character, so far as it related to the counts charging violation of the Act, was properly excluded. Where the mens rea is not involved in a crime defined under the police power, i.e., where the sole question is whether the defendant performed the act forbidden by law or failed to perform the act commanded by it, his character is not in issue for any purpose, and evidence of his good reputation for some trait or another is not admissible." Again, the evidence in this case of the general reputation of the defendant as a law abiding citizen was not relevant.

However, in the instant case it is clear that the matter before the jury was a determination of whether or not the county chairman directly or indirectly demanded assessments or contributions from the complaining employes with the express or implied understanding that the same was to be used for political purposes. This question clearly became one of credibility and the jury's verdict indicated belief of the Commonwealth's witnesses.

"In determining the relevancy of character as affecting the credit to be given to a witness, the first question is, What kind of character is relevant? Since the argument is to be against or for the probability of his now telling the truth upon the stand, it is obvious that the quality or tendency which will here aid is his quality or tendency as to truth-telling in general, i.e., his veracity, or, as more commonly and more loosely put, his character for truth. This must be, and is universally conceded to be, the immediate basis of inference. Character for truth is always and everywhere admissible." Wigmore on Evidence, Vol. III, §922.

Most certainly, if the acts complained of had been admitted by the defendant and as, under the statute, there was no burden on the Commonwealth to prove criminal intent, then the only question before the jury was whether the acts committed constituted a violation of the statute, and all character evidence would be irrelevant and, so, inadmissible. But here the court charged the jury as follows: "You may consider the testimony of these plaintiffs as coming within the wording of this act; that is, directly or indirectly demanding, and the money was expressly or impliedly understood to be used for political purposes. I will not say to you as a matter of law that this evidence does come within that definition. I say to you, however, you are to consider whether or not it does, if you find the five witnesses for the Commonwealth stated the correct version of what occurred there on the night of the 25th or on the 26th. On the other hand, you consider the testimony of the defendant Zeger and his two other witnesses, members of the committee who were there, and whether what they stated was said is correct. There is a direct conflict between these two groups of witnesses. That, mem-

bers of the jury, is for your determination, and that rests, that determination rests upon the credibility of the witnesses for the Commonwealth and the defendant and his witnesses. Credibility is believability."

The offer of evidence of the reputation of defendant's good character for truth and veracity was clearly relevant and the inference that the jury could have drawn therefrom, as substantive evidence, may well have raised the reasonable doubt to effect the acquittal of the defendant.

As we have determined that an appeal by the Commonwealth does not lie in this case, the appeal is, therefore, quashed.