452 A.2d 747

**COMMONWEALTH of Pennsylvania**

v.

**Patricia MONVILLE, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1982.

Filed Nov. 12, 1982.

Theodore Simon, Philadelphia, for appellant.

David M. McGlaughlin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before SPAETH, CAVANAUGH and MONTEMURO, JJ.

SPAETH, Judge:

This is an appeal from judgment of sentence for retail theft.[1] Appellant argues that the evidence was insufficient to sustain the conviction.[2] We agree. Accordingly, the judgment of sentence is reversed and appellant ordered discharged.

The Commonwealth's only witness was John J. McConnell, the Inspector of Security at the John Wanamaker Store at

---

1.  18 Pa.C.S.A. § 3929.

2.  Appellant also argues that it was error for the trial judge to refuse to allow her to present evidence of her reputation for honesty. We need not address that issue.

which the incident in question occurred. Appellant testified in her own defense, and gave an entirely innocent explanation of the incident, but since at this stage the Commonwealth is entitled to have the evidence regarded in the light most favorable to it, *Commonwealth v. Crowson,* 488 Pa. 537, 412 A.2d 1363 (1979); *Commonwealth v. Vogel,* 468 Pa. 438, 364 A.2d 274 (1976), we shall for the moment ignore appellant's testimony—we do wish to discuss it later—and shall refer only to Mr. McConnell's.

Mr. McConnell's direct testimony—all of it—was as follows:

BY MR. SILOW [the assistant district attorney]:

Q. Mr. McConnell, I would like to direct your attention to November 25, 1980. Whom were you employed by? [In fact the incident occurred on October 25, 1980.]

A. John Wanamaker.

Q. And in what capacity, sir?

A. Inspector of security.

Q. Now, directing you back to November 25, 1980, did you have occasion to come into contact with the defendant?

A. Yes.

Q. Is she in the courtroom today?

A. She is, indeed.

Q. Can you identify her, please, for the record?

A. The young lady sitting right there. (Indicating.)

MR. SILOW: Can we agree that he has identified the defendant?

MR. SIMON: Yes.

MR. SILOW: Very well.

BY MR. SILOW:

Q. Mr. McConnell, what was the nature of your contact with the defendant? In other words, what happened when you came in contact?

A. Well, I noted this young lady at that time it was a hosiery department and it appeared to me that she had a bag with some—could be clothing or something under-

neath her left arm. She was looking at some merchandise against the wall, hanging on the wall. And I did not know whether—as it developed later she was comparing as far as color was concerned.

However, I looked upon it as something suspicious and I was watching her. At that point John Campbell came up who was a cohort of mine and we watched her together.

And she went from there to a rack on the floor that had hosiery on it. She removed some hosiery and then walked across the store towards a wall on the other side of the building. All along she had this hosiery in her hand. She did not conceal it.

And I went over there the other way and I lost her for a second and then I did see her later on—well, a minute or so later in that section.

Now, I must point out at this point that she did have a Strawbridge & Clothier bag and it was quite prominent because it is yellow and black as I remember it. Now I could not see what she had done with the hosiery.

BY THE COURT:

Q. Just get down to what happened.

A. But I did see her take an umbrella from a display rack and put it in her bag, in the Strawbridge and Clothier bag. At that point John Campbell came up and—well, she started towards the front door and at that point John Campbell came up and escorted her back to the security office.

That was my involvement.

MR. SILOW: I have no further questions of this witness.

THE COURT: Cross-examine.

N.T. 4–6.

Sometimes on cross-examination a witness gives answers that fill in gaps remaining after direct, but that didn't happen here. On cross, Mr. McConnell said again that appellant did not conceal the hosiery. N.T. 5. Generally, he said very little else. He recalled that it was raining. N.T. 8.

He lost sight of appellant for awhile and did not see whether she stopped at the glove department, N.T. 9, or whether she dropped any items on the floor and bent down to pick them up, N.T. 10, or what, besides the hosiery, she was carrying, N.T. 10–11. He said that he "thought she was putting the merchandise in the bag," N.T. 11, but he didn't identify what "merchandise" he meant, and when asked, "But she never did that [put it in the bag]?", he answered, "No, she did not." N.T. 11.

In holding this evidence sufficient, the lower court said:

The circumstantial evidence in this case was the observation that in this Wanamaker store defendant took hosiery from a stack, passed by several departments, then removed an umbrella from a display rack and put the same in her Strawbridge & Clothier bag. This *concealment* was sufficient to raise the statutory presumption of 18 Pa.C.S.A. 3929(c), quoted *supra.*

Slip op. at 4 (emphasis in original).

The statute the court refers to provides that "[a]ny person intentionally concealing unpurchased property of any store ... on the premises ... shall be prima facie presumed to have so concealed such property with the intention of depriving the merchant of ... such merchandise without paying the full retail value thereof .... "

But there was no evidence of "*concealment.*" Mr. McConnell only said, "But I did see her take an umbrella from a display rack and put it in her bag, in the Strawbridge & Clothier bag." N.T. 6. He did not say how big the bag was; nor that the bag was ever closed; nor that the umbrella was ever out of his sight.

We had a similar case in *Commonwealth v. Bonn,* 244 Pa.Super. 315, 368 A.2d 738 (1976). There a security guard saw the appellant "place a packaged bra in her purse." *Id.,* 244 Pa.Superior Ct. at 316, 368 A.2d at 739. "She then placed the open purse in the seat part of the shopping cart, which contained other merchandise she had selected, and continued her shopping." *Id.* A short time later, while still in the store, she was arrested. "The security guard testified

he could see the package with the price tag intact in the top of the purse when he approached appellant. The open purse had a broken zipper and could not be closed and the package in the purse was not covered by anything." *Id.*, 244 Pa.Superior Ct. at 318, 368 A.2d at 740. We held that this evidence "did not sufficiently establish that the property was concealed," *id.*, and that therefore the statutory presumption of intention not to pay never came into effect.

We see no basis on which this case and *Bonn* can be distinguished. Indeed, the evidence here was *more* insufficient than it was in *Bonn*. All we know is that appellant "put" the umbrella "in her bag." The plain inference is that the umbrella continued to stick out of the bag, and therefore, continued to remain visible—a good deal more visible than was the packaged bra in the appellant's purse in *Bonn*.

We said at the beginning that we wished to discuss appellant's testimony. We do because it emphasizes the insufficiency of the Commonwealth's case.

At the time of the trial, in June 1981, appellant was 31 years old. N.T. 14. On the day of the incident in question, October 25, 1980, when she was arrested, appellant was a school teacher. She also worked one day a week as a flower arranger at the John Wanamaker store where she was arrested. N.T. 14–15. Since her arrest, appellant has not been permitted to work for the school district. N.T. 15.

On October 25th, appellant was to attend the wedding of a good friend. N.T. 15. She realized that morning that she had no stockings to go with the outfit she was going to wear to the wedding. She therefore put the skirt she was going to wear to the wedding in a paper bag and went to Wanamaker's to buy stockings that would match it. N.T. 15–16. The Strawbridge & Clothier bag that Mr. McConnell, the security officer, referred to was the bag she put her skirt in. *Id.* She was also carrying the tools she used in making flower arrangements. N.T. 17. On the way to Wanamaker's she stopped at the drug store. It had started raining heavily, and by the time she got to Wanamaker's she was soaked. *Id.*

At the hosiery department appellant took her skirt out of the bag and held it up to compare its color with several different stockings. N.T. 18. She then went to get an umbrella; she "assumed that the weather would continue and [she] did not want to get all dressed up and then [get] wet—." N.T. 19. On the way to the umbrella department she saw some gloves of the color she wanted, so she got the gloves and continued on to the umbrella department. *Id.* She selected one umbrella but it was "quite expensive." She therefore looked at others, but she wasn't sure of the difference in price. N.T. 21. Turning to someone to try to find out the umbrella prices, she dropped her various packages. By this time it was about 11:45 and she was rushing, for she was supposed to be picked up for the wedding at 12:30. N.T. 22–23. She got out her charge card and also some cash—she preferred to charge but she was not sure whether her charge card was still effective for she had not used it for the past six months, N.T. 25—and, she testified,

> I took the stockings and one umbrella that I could not manage and I put them in the bag. I had another umbrella and a pair of gloves in my hand as well as my raincoat and the bag that I had my skirt in.
>
> As I stood up and started to walk towards the counter and I had almost not really begun to move the man grabbed me by the arm and said—
> N.T. 23–24.

▮▮▮ None of appellant's testimony was contradicted; and all of it was consistent with Mr. McConnell's testimony. To be sure, the trial judge could still reject appellant's testimony—and his verdict shows that he did. But rejecting it doesn't save the Commonwealth's case. For a conviction must be based on more than mere suspicion or conjecture, *Commonwealth v. Roscioli,* 454 Pa. 59, 309 A.2d 396 (1973), and when the evidence is as consistent with innocence as it is with guilt, a conviction may not stand, *Commonwealth v. Goodman,* 465 Pa. 367, 350 A.2d 810 (1976). In *Commonwealth v. Bonn, supra,* we said:

330

When the presumption [the statutory presumption of intention not to pay] is not available, guilt may still be proved by other evidence including circumstantial evidence. But here, without the use of the presumption there was no other evidence of appellant's intent.

*Id.* 244 Pa.Super. at 319, 368 A.2d at 741.

The same may be said here.

The judgment of sentence is reversed and appellant ordered discharged.