482 A.2d 968

**COMMONWEALTH of Pennsylvania**

v.

**Samuel A. LITZENBERGER, Appellant.**

Superior Court of Pennsylvania.

Argued March 13, 1984.

Filed Sept. 7, 1984.

Reargument Denied Nov. 9, 1984.

Petition for Allowance of Appeal Denied April 10, 1985.

472

474

Ralph W. Litzenberger, Easton, for appellant.

William Merz, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Samuel A. Litzenberger, a practicing attorney, was tried non-jury and was found guilty on a charge of driving while under the influence of alcohol which had been brought after his involvement in a vehicular accident in Bucks County. On direct appeal from the judgment of sentence, Litzenberger contends: (1) the evidence was insufficient to sustain the conviction; (2) the trial court erred when it refused to suppress the results of a breathalyzer test showing that Litzenberger's blood alcohol had been .22 percent; and (3) trial counsel employed by Litzenberger was constitutionally ineffective.[1] We find no merit in these contentions and, accordingly, affirm the judgment of sentence.

1. An argument has also been made that the criminal complaint was insufficient. This issue was not preserved in written post-trial motions and, therefore, has been waived. See: *Commonwealth v. Shain,* 324 Pa.Super. 456, 467 n. 1, 471 A.2d 1246, 1251 n. 1 (1984); *Common-*

When considering the sufficiency of the evidence, we are required to view the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, which has won the verdict. The test is whether the evidence, when so viewed, is sufficient to permit a finding of guilt beyond a reasonable doubt. *Commonwealth v. Stoyko*, 504 Pa. 455, 462, 475 A.2d 714, 718 (1984); *Commonwealth v. Hamm*, 325 Pa.Super. 401, 407–408, 473 A.2d 128, 131 (1984). In making this determination, we consider all the evidence adduced at trial, whether the court's evidentiary rulings thereon were correct or not. *Commonwealth v. Gray*, 322 Pa.Super. 37, 40, 469 A.2d 169, 170 (1983); *Commonwealth v. Fields*, 317 Pa.Super. 387, 395, 464 A.2d 375, 379 (1983). Conflicts in the evidence must be resolved by the trier of the facts, in this case the trial judge, who alone must decide the credibility and weight of the evidence. See: *Commonwealth v. Smith*, 502 Pa. 600, 604, 467 A.2d 1120, 1122 (1983); *Commonwealth v. Hamm, supra,* 325 Pa.Superior Ct. at 407–408, 473 A.2d at 131; *Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1229–1230 (1984).

On the evening of January 3, 1977, at or about 9:30 p.m., appellant was operating a vehicle at a high rate of speed on Route 212 in Pleasant Valley when it collided with a vehicle emerging from a private driveway and being operated by Sharon LaBarr. Chief Alex Chasar and Officer Robert Kramer of the Springfield Township Police arrived shortly thereafter. Chasar placed flares on the roadway, and Kramer interviewed the two drivers. Kramer observed an odor of alcohol emanating from appellant, as well as his disorientation and slurred speech. When asked for an operator's license and owner's card, appellant experienced difficulty in producing them. During the time that Kramer was writing his report, he observed appellant walking around in the roadway and admonished him on several occasions to stay out of the road. When appellant entered

*wealth, Dept. of Labor and Industry v. Giugliano,* 318 Pa.Super. 32, 34, 464 A.2d 503, 504 (1983). In any event, there is no merit therein.

the vehicle of his wife, who had arrived at the scene in response to appellant's telephone call, and gave evidence of an intent to leave the accident scene, Chasar instructed Kramer to have appellant sit in the police vehicle. Kramer then read to appellant his rights under *Miranda* and told him that he was being placed under arrest for driving while under the influence. With Litzenberger in his police vehicle, Kramer set out for the State Police Barracks in Dublin for purposes of administering a sobriety test to appellant. While en route, Kramer was advised by radio that the equipment at Dublin was inoperative. Therefore, he took appellant a distance of fifteen miles to the barracks of the State Police located at Bethlehem. There a breathalyzer test was administered and disclosed a blood alcohol content of .22 percent.

This evidence was clearly sufficient to support appellant's conviction. He contends, however, that the breathalyzer test was unlawfully administered (a) because his arrest had been without probable cause; and (b) because the test was administered in a county different than that in which the alleged offense occurred. The suppression court found that appellant had been arrested by Officer Kramer after Kramer had probable cause to believe that appellant had been under the influence of alcohol at the time the accident occurred. In reviewing the findings of the suppression court, we will not disturb that court's findings if they are supported by the record; in making such a determination, we look only to the prosecution's evidence and so much of the evidence of the defense as, looking at the record as a whole, remains uncontradicted. *Commonwealth v. Frederick*, 327 Pa.Super. 199, 206, 475 A.2d 754, 758 (1984). The suppression court's order is fully supported by the record in this case. Although the offense which appellant was believed to have committed was only a misdemeanor, Kramer could, nevertheless, effect a lawful arrest without warrant under the Motor Vehicle Code then in effect. See: Act of April 29, 1959, P.L. 58, § 1204, 75 P.S. § 1204 (repealed and replaced by 75 Pa.C.S. § 6304).

■■■■ Pursuant to the provisions of Section 624.1 of the Motor Vehicle Code of 1959, 75 P.S. § 624.1, as amended,[2] an officer effecting a legal arrest for driving while under the influence of alcohol was authorized to transport the person arrested to an appropriate facility for a sobriety test. See: *Commonwealth v. Quarles,* 229 Pa.Super. 363, 324 A.2d 452 (1974). The statute imposed no geographical limitation. We decline to interpret the section as requiring that the testing facility be situated in the same county as that in which the alleged offense occurred. Where, as here, the equipment at the Dublin barracks was inoperative, the facilities at the Bethlehem Barracks in Lehigh County were appropriately located. These facilities were located a mere fifteen miles from the scene of the accident. They were not rendered inappropriate because they were available in an adjacent county. Compare: *Commonwealth v. Quarles, supra* (a suspect not under legal arrest may not be transported 22 miles for a sobriety test without his consent).

After post-trial motions had been denied and sentence had been imposed, an appeal was filed in this Court. Thereafter, appellant discharged his trial counsel, and Ralph Litzenberger, Esquire, entered an appearance on appellant's behalf. Appellant and his new counsel were then successful in obtaining an order remanding the case to provide appellant with an opportunity to show at an evidentiary hearing that trial counsel had been ineffective. Following an evidentiary hearing, the court found that trial counsel had not been constitutionally ineffective and again refused appellant's request for a new trial. Although appellant continues to assert in this Court that trial counsel was ineffective, he has inexplicably failed to provide this Court with a transcript of the evidentiary hearing at which relevant testimony was taken. Such a transcript, we are advised, is unavailable and cannot be provided.

**2.** This section was added to the Motor Vehicle Code by the Act of July 28, 1961, P.L. 918, § 1 and has now been replaced by 75 Pa.C.S. §§ 1547, 3749.

On May 14, 1984, the Supreme Court of the United States, in *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), gave us for the first time a definition of that defective assistance which would render counsel ineffective under the federal constitution. The Court said:

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

\* \* \* \* \* \*

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133–134 [102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' See *Michel v. New York,* [350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)] [sic]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 343 (1983).

"The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

"These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions. See *United States v. Decoster*, [624 F.2d 196, 209–210 (D.C.Cir.1979) ].

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judg-

ment. Cf. *United States v. Morrison*, 449 U.S. 361, 364–365 [101 S.Ct. 665, 667–668, 66 L.Ed.2d 564] (1981). The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution."

*Id.* at —— – ——, 104 S.Ct. at 2064–2067.

 If, at first blush, this appears to be a departure from the analysis of counsel's effectiveness under *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), a close examination of subsequent Pennsylvania decisions discloses a totally harmonious relationship between *Strickland* and the rule adopted by the courts of this Commonwealth for determining ineffectiveness under Article 1, section 9 of the Pennsylvania Constitution. Thus, in *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74 (1983) the Supreme Court said:

"Before a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect defendant's interests. See *Commonwealth v. Hill*, 450 Pa. 477, 301 A.2d 587 (1973). Thus, counsel's assistance is deemed constitutionally effective once we are able to conclude the particular course chosen by counsel had some reasonable basis designated to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349 (1967). We presume counsel is effective. Moreover, the burden

of establishing counsel's ineffectiveness rests upon his client.

*Id.*, 503 Pa. at 596, 470 A.2d at 77. The first issue to be addressed under the Pennsylvania decisions is whether the claim of ineffectiveness has arguable merit. Only if that issue is answered affirmatively, does it become necessary to determine whether counsel had a reasonable basis, designed to serve the interests of his client, for the course actually chosen. See: *Commonwealth v. Stoyko, supra*, 504 Pa. at 472, 475 A.2d at 723; *Commonwealth v. Tann*, 500 Pa. 593, 600, 459 A.2d 322, 326 (1983); *Commonwealth v. Torres*, 329 Pa.Super. 58, 67, 477 A.2d 1350, 1355 (1984); *Commonwealth v. Howard*, 324 Pa.Super. 443, 448, 471 A.2d 1239, 1241 (1984). Moreover, the courts of this State have repeatedly said that counsel will not be deemed ineffective in the absence of some showing that the defendant was prejudiced by counsel's alleged shortcomings. *Commonwealth v. Ford*, 491 Pa. 586, 592, 421 A.2d 1040, 1043 (1980), quoting *Commonwealth v. Wade*, 480 Pa. 160, 172, 389 A.2d 560, 566 (1978); *Commonwealth v. Smith*, 321 Pa.Super. 170, 209–213, 467 A.2d 1307, 1328–1329 (1983). Accord: *Commonwealth v. Laurenson*, 323 Pa.Super. 46, 60–61, 470 A.2d 122, 129 (1983); *Commonwealth v. Vesay*, 318 Pa.Super. 320, 326–327, 464 A.2d 1363, 1367 (1983); *Commonwealth v. Barton*, 312 Pa.Super. 176, 182, 458 A.2d 571, 575 (1983). But see: *Commonwealth v. Badger*, 482 Pa. 240, 393 A.2d 642 (1978). Other decisions have reached the same result when alternatives not chosen by counsel failed to offer "a potential for success greater than those actually utilized." *Commonwealth ex rel. Washington v. Maroney, supra* at 605 n. 8, 235 A.2d at 353 n. 8. See: *Commonwealth v. Turner*, 469 Pa. 319, 324, 365 A.2d 847, 849 (1976); *Commonwealth v. Presbury*, 329 Pa.Super. 179, 184, 478 A.2d 21, 24 (1984); *Commonwealth v. Whyatt*, 327 Pa.Super. 491, 495, 476 A.2d 374, 376 (1984); *Commonwealth v. Bailey*, 322 Pa.Super. 249, 267, 469 A.2d 604, 613 (1983); *Commonwealth v. Wilson*, 321 Pa.Super. 318, 322, 468 A.2d 498, 500 (1983).

■ In this case the defendant was himself an attorney who was knowledgeable and experienced in the practice of criminal law and procedure. His assertion that trial counsel was ineffective for failing to interview witnesses, therefore, was understandably viewed with suspicion by the trial court. It explains the trial court's finding that appellant was not prejudiced by the failure of counsel to conduct his own interviews with witnesses, some of whom, in fact, had been cross-examined extensively during the preliminary hearing.

We reject appellant's argument that we should remand once again so that he can have another opportunity to prove the ineffectiveness of trial counsel. A prior remand, with resulting, lengthy delay, was obtained at the behest of appellant so that he might effect an evidentiary record to support his claim that trial counsel had been ineffective. We will not again remand merely because appellant failed to obtain and provide us with a record of the hearing held before the trial court. Appellant has failed to meet the burden of proving that trial counsel was ineffective, and the judgment of sentence, therefore, will be affirmed.

Judgment of sentence affirmed.