509 A.2d 1263

**COMMONWEALTH of Pennsylvania**

v.

**John SPEIGHTS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 16, 1985.

Filed April 3, 1986.

Reargument Denied June 16, 1986.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BECK and CERCONE, JJ.

BECK, Judge:

The sole issue in this appeal is whether, without explanation by expert testimony, the result of a breathalyzer test administered two hours and forty-five minutes after appellant operated a motor vehicle, constitutes sufficient evi-

dence to convict appellant of violating subsection 3731(a)(4) of the Vehicle Code,[1] namely, "[a] person shall not drive, operate or be in actual physical control of the movement of any vehicle while ... the amount of alcohol in the blood of the person is 0.10% or greater." We hold that a breathalyzer test result can, by itself, support a conviction under subsection 3731(a)(4), and accordingly, we affirm the order of the court of common pleas.

■ At a trial in the Philadelphia Municipal Court, appellant was convicted of having a blood alcohol level of 0.10% or greater while he was operating a vehicle. 75 Pa.C.S.A. § 3731(a)(4). Appellant then filed a petition for a writ of certiorari in the Court of Common Pleas of Philadelphia County.[2] From the denial of the petition, appellant brought the present appeal contesting the sufficiency of the evidence of his conviction.

Our scope of review in considering a claim of insufficient evidence is to view the evidence, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Dincel,* 311 Pa.Super. 470, 457 A.2d 1278 (1983). The test is whether the evidence, when so viewed, is sufficient to permit a finding of guilt beyond a reasonable doubt. *Commonwealth v. Litzenberger,* 333 Pa.Super. 471, 482 A.2d 968 (1984).

Appellant was arrested at approximately 5:00 p.m. The arresting officer testified that although appellant's car did

1. 75 Pa.C.S.A. § 3731(a)(4).

2. A petition for a writ of certiorari is an alternative to an appeal for a trial de novo in the common pleas court. *Commonwealth v. Frazier,* 324 Pa.Super. 334, 471 A.2d 866 (1984); *Commonwealth v. Dincel,* 311 Pa.Super. 470, 457 A.2d 1278 (1983). Whereas the petition requests that the common pleas court review the record made in the municipal court, the appeal gives the defendant a new trial without reference to the record established in the municipal court. *Frazier.* The following example illustrates the difference between the two procedures: "[I]f the evidence was insufficient to sustain the conviction, [the] ... writ of certiorari would terminate the prosecution, while a de novo appeal would merely require a new trial at which the Commonwealth would have another opportunity to convict the defendant." *Id.* 324 Pa.Super. at 338, 471 A.2d at 868 (emphasis deleted).

not collide with anything, it was swerving from side to side on the road and nearly struck some parked vehicles. Furthermore, the officer stated that appellant ran a red light and did not pull over in response to the officer's having sounded his police car siren. When appellant eventually stopped, the officer observed that appellant had bloodshot eyes and that there was a heavy odor of alcohol emanating from inside appellant's car. In addition, the officer stated that when appellant stepped outside his vehicle, he staggered and almost fell to the ground.

Appellant testified that he left work at 4:00 p.m., stopped at a bar and purchased a six-pack of beer. He testified he drank one can of beer between 4:00 and 5:00 p.m. (the latter being the approximate time of his arrest) and drank no other alcoholic beverage that day. At approximately 7:45 p.m., two hours and forty-five minutes after his arrest, appellant was given a breathalyzer test by a state-certified breathalyzer operator who used a breathalyzer machine that was duly certified according to the regulations of the Pennsylvania Departments of Transportation and Health. *See* subsection 1547(c) of the Vehicle Code, 75 Pa.C.S.A. § 1547(c). The breathalyzer recorded appellant's blood alcohol content as 0.12%.

Thereafter, appellant was charged solely with violating subsection 3731(a)(4) of the Vehicle Code. The Commonwealth could also have charged appellant with a violation of subsection 3731(a)(1) of the Vehicle Code [3] which prohibits the operation of a motor vehicle by a person while "under the influence of alcohol to a degree which renders the person incapable of safe driving." Appellant concedes that the evidence offered at trial would have been legally sufficient to convict him under subsection 3731(a)(1). Nevertheless, since appellant was not charged under subsection 3731(a)(1), it is irrelevant that the evidence adduced in this case would have sufficed to convict appellant of violating subsection 3731(a)(1). *See, e.g., United States v. Cusmano,* 659 F.2d 714, 719 (6th Cir.1981); *United States v. Pepe,* 198

---

**3.** 75 Pa.C.S.A. § 3731(a)(1).

F.Supp. 226, 229 (D.Del.1961); *Commonwealth v. Simione,* 447 Pa. 473, 291 A.2d 764 (1972); *Commonwealth v. Lambert,* 226 Pa.Super. 41, 44, 313 A.2d 300, 301 (1973).

A subsection 3731(a)(4) offense contains two elements: (1) the operation of a motor vehicle and (2) the presence of at least 0.10% alcohol by weight in the motorist's blood during the course of that operation. *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983). In this case the first element is undisputed since appellant was arrested while driving his car. Thus, the only question before us is whether the Commonwealth failed to offer sufficient proof beyond a reasonable doubt to establish the second element of the offense—that at the time appellant was driving, appellant's blood alcohol content was 0.10% or greater.

At trial, the result of a breathalyzer test[4] administered two hours and forty-five minutes after appellant's arrest comprised the sole evidence of appellant's blood alcohol level while appellant was driving. Appellant does not contest the admissibility of the breathalyzer test result. Unquestionably, the breathalyzer test result satisfied the statutory requirements for introduction into evidence since the breathalyzer test was "conducted [on appellant] by qualified persons using approved equipment," 75 Pa.C.S.A. § 1547(c), and was done at the request of a police officer who had "reasonable grounds to believe [appellant] to have ... [operated] a motor vehicle ... while under the influence of alcohol...." 75 Pa.C.S.A. § 1547(a); *Commonwealth v. Sweet,* 232 Pa.Super. 372, 335 A.2d 420 (1975), *allocatur denied,* May 22, 1975 (the chemical testing provisions now codified at 75 Pa.C.S.A. § 1547 formerly appeared at 75 P.S. § 624.1). Moreover, even prior to the enactment of subsection 3731(a)(4),[5] blood alcohol test results were routinely

4. The breathalyzer test measures breath, not blood, and is an indirect or derived means of establishing blood alcohol content. A. Moenssens & F. Inbau, *Scientific Evidence in Criminal Cases* 78–83 (2d ed. 1981).

5. Section 3731 of the Vehicle Code was amended on December 15, 1982, to add the new offense of subsection (a)(4), operating a vehicle

admitted into evidence where the tests were given remote in time from the occurrence of the alcohol-connected offense. *Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643 (1980) (blood sample taken approximately two hours and seventeen minutes after defendant's vehicular accident); *Commonwealth v. Tylwalk*, 258 Pa.Super. 506, 393 A.2d 473 (1978) (breathalyzer and chemical tests administered approximately four hours and fifteen minutes after defendant's hit-and-run accident); *Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977) (blood sample drawn from defendant about one hour and thirty-eight minutes after defendant's hit-and-run accident).

Notwithstanding the admissibility of the blood alcohol test result, appellant contends that where, as in his case, a considerable time span elapsed between the commission of the alcohol-connected vehicular offense and the performance of a blood alcohol test, expert testimony was needed to relate the test result back to the pertinent statutory time frame, namely, the period preceding the test when the accused was operating a motor vehicle. At appellant's trial the Commonwealth did not offer any expert testimony relating the breathalyzer test result to appellant's blood alcohol level when appellant was driving two hours and forty-five minutes before the test was conducted. Hence, appellant asserts that the Commonwealth presented insufficient evidence that his blood alcohol content, by weight, was 0.10% or greater while he was actually driving.

For the following reasons, we conclude that the Commonwealth is not *required* to offer evidence relating a blood alcohol test result back to the time of a vehicular offense and that the absence of expert testimony relating back a remote test result will not render the test result insufficient evidence upon which the fact-finder *may* convict a defendant of violating subsection 3731(a)(4) of the Vehicle Code.

Preliminarily, we note "[i]t is the norm rather than the exception that, in the case of an automobile accident, some

while the motorist's blood alcohol content was 0.10% or greater. Subsection 3731(a)(4) became effective on January 15, 1983.

time passes between the incident and the arrival of police at the scene, or police apprehension of the motorist who has simply continued on after the accident." *Tylwalk*, 258 Pa.Super. at 510, 393 A.2d at 475. Thus, there is ordinarily a time lapse between the occurrence of a vehicular offense and the performance of a blood alcohol test on a motorist. We now consider the effect of the customary pre-test delay on an accused's blood alcohol level.

As a majority [6] of our court observed in *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295 (1977), *allocatur denied*, April 5, 1978, "[a]lcohol has no effect until absorbed into the bloodstream which occurs from 30 minutes to 90 minutes after consumption." *Id.*, 252 Pa.Superior Ct. at 461, 381 A.2d at 1298. Thus, if a defendant's drinking is confined to a period immediately before arrest, a test within the first 30 minutes after arrest may show a low blood alcohol content whereas a test within 60 minutes after arrest may indicate a high blood alcohol level. *See, e.g.,* *McCormick on Evidence* § 205 (E. Cleary 3d ed. 1984); A. Moenssens & F. Inbau, *Scientific Evidence in Criminal Cases* (2d ed. 1981); Fitzgerald & Hume, *The Single Chemical Test for Intoxication: A Challenge to Admissibility*, 66 Mass.L.Rev. 1 (1981).

However, "the percentage of alcohol in the bloodstream diminishes rapidly after drinking ceases." *Trefry*, 249 Pa. Super. at 126, 375 A.2d at 791 (citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Thus, if an accused stops drinking 30 to 90 minutes before arrest, the accused's blood alcohol content will probably be falling at the time of arrest. The accused will accordingly benefit from a pre-test delay due to the "evanescent nature of the alcohol in [the] bloodstream." *Commonwealth v.*

6. Although *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295 (1977), *allocatur denied*, April 5, 1978, resulted in a plurality decision, five of the seven judges deciding the case agreed that alcohol was absorbed into the bloodstream within 30 to 90 minutes after imbibition. Both Judge Watkins' lead opinion (joined by Judges Jacob and Van der Voort) and Judge Price's concurring opinion (joined by Judge Spaeth) stated that the alcohol absorption rate had been scientifically established at 30 to 90 minutes after alcohol ingestion.

*Anderl,* 329 Pa.Super. 69, 85, 477 A.2d 1356, 1364 (1984); *Trefry* (citing *Schmerber*); *see, e.g., McCormick on Evidence, supra,* at § 205; Moenssens & Inbau, *supra;* Fitzgerald & Hume, *supra.*

Remoteness in testing for blood alcohol raises the same problems as remoteness in other types of testing, i.e., the reliability of the test result. However, in this situation, the remoteness in time usually inures to the benefit of the defendant. The more remote in time, the more likely that the defendant's blood alcohol content will register lower than it was at the time he was driving.

Recognizing the fact that the remoteness of a blood alcohol test generally inures to the benefit of the defendant-driver, the Pennsylvania legislature has not placed time restrictions on the use of blood alcohol test results but has provided a method whereby the reliability of such results can be challenged. Section 1547 of the Vehicle Code, 75 Pa.C.S.A. § 1547 (chemical testing provision). Such an approach is consistent with the legislature's *"compelling* interest in protecting the health and safety of the travelers upon our highways and roads against the ravage cause by drunken drivers," *Mikulan,* 504 Pa. at 251, 470 A.2d at 1342 (emphasis in original), and is also consonant with protection of an accused against arbitrary government action or lack of due process. *Id.*

Under section 1547 of the Vehicle Code, our legislature has not prescribed statutory time limits within which blood alcohol testing must be conducted in order to constitute acceptable evidence of an accused's blood alcohol level while driving. *Tylwalk; Trefry.* Moreover, the legislature has not mandated that the Commonwealth adduce evidence corroborating or explaining blood alcohol test results except for that evidence necessary to establish the admissibility of the test results pursuant to subsections 1547(a) and 1547(c), i.e., probable cause to order a test and proper administration of the test. *Commonwealth v. DiFrancesco,* 458 Pa. 188, 329 A.2d 204 (1974), *reh'g denied,* December 17, 1974. Nevertheless, we emphasize that the Commonwealth is not

relieved of its burden of proving beyond a reasonable doubt that an accused has committed an alcohol-connected vehicular offense. *Id.; Commonwealth v. Gearhart,* 253 Pa.Super. 238, 384 A.2d 1321 (1978); *see Arizini; Tylwalk; Trefry.*

If a defendant wishes to contest the reliability of the blood alcohol test results proffered by the Commonwealth, he is statutorily permitted to do so. *DiFrancesco; Arizini; Tylwalk; Trefry.* Subsection 1547(f) of the Vehicle Code [7] specifically states that the other subsections of the Code's chemical testing provision "shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of alcohol." *See also DiFrancesco.* Furthermore, subsection 1547(h) of the Vehicle Code [8] allows a defendant to introduce into evidence the results of an additional blood alcohol test performed by a physician of the defendant's own choosing. "At trial, the results of a test, as indicative of [blood alcohol content] at a relevant point in time, may be attacked or contradicted by any competent evidence. The weight to be accorded test results then properly rests with the finder of fact." *Trefry,* 249 Pa.Super. at 130, 375 A.2d at 793 (footnote deleted); *Arizini; Tylwalk.*

■ Accordingly, we hold that blood alcohol test results can—by themselves, without explanation by expert testimony—suffice to support a conviction under subsection 3731(a)(4) but that blood alcohol test results do not compel the trier of fact to find a defendant guilty of violating subsection 3731(a)(4) where there is competent evidence of record challenging said test results.

Our holding conforms with the purpose underlying the legislature's enactment of subsection 3731(a)(4), namely, the exercise of the legislature's "broad police powers ... in an attempt to halt, or at least to retard, the wanton and senseless slaughter of and injury to innocent people upon

7. 75 Pa.C.S.A. § 1547(f).
8. 75 Pa.C.S.A. § 1547(h).

our highways caused by drunk drivers." *Mikulan,* 504 Pa. at 248, 470 A.2d at 1341. We recognize the creation of the per se subsection 3731(a)(4) violation as an additional pronouncement by the legislature of its clear intention to adopt a more stringent view toward drunk driving offenses in an effort to curb the burgeoning epidemic of alcohol-connected vehicular accidents by placing "the risk of erroneous judgment of alcohol consumption on the person who has the choice, the drinking driver, rather than upon the unwitting and innocent victims of his or her erroneous judgment." *Mikulan,* 504 Pa. at 255, 470 A.2d at 1344.

Order affirmed.