518 A.2d 266

**COMMONWEALTH of Pennsylvania**

v.

**Brian SLINGERLAND, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 1986.

Filed Oct. 9, 1986.

Reargument Denied Dec. 15, 1986.

Robert J. Magee, Allentown, for appellant.

Henry Perkin, Assistant District Attorney, Allentown, for Com.

Before CIRILLO, President Judge, and WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

The principal issue in this appeal is whether the criminal offenses defined in 75 Pa.C.S. § 3731(a)(1) and 75 Pa.C.S. § 3731(a)(4) are "cognate" offenses for the purpose of applying Pa.R.Crim.P. 225 to the preparation of a criminal information.

At or about midnight on July 20, 1984, Brian Slingerland lost control of his motorcycle while operating it on Cetronia Road in South Whitehall Township, Lehigh County. When Tpr. Theodore Kohuth arrived at the scene of the accident, Slingerland had already been placed in an ambulance. Ko-

huth completed his investigation at the scene of the accident and then followed the ambulance to the Lehigh Valley Hospital Center. When he arrived shortly after 1:00 a.m. and observed Slingerland lying on a hospital gurney, he detected an odor of alcohol about Slingerland's person and observed that Slingerland was disoriented and glassy eyed. Kohuth was of the opinion that Slingerland was under the influence of alcohol; and, therefore, he requested that a blood sample be drawn. Pursuant to this request, blood was taken from Slingerland at 1:23 a.m. and, when tested, disclosed a blood alcohol content of .13%.

Kohuth filed a criminal complaint averring that Slingerland had operated a motor vehicle while under the influence of intoxicating liquor to an extent which rendered him incapable of safe driving, in violation of 75 Pa.C.S. § 3731(a)(1).[1] After a preliminary hearing had been held and the criminal proceedings had been returned to court, the District Attorney prepared and filed an information which alleged, in addition to a violation of 75 Pa.C.S. § 3731(a)(1), that Slingerland had operated a motor vehicle when the alcoholic content of his blood exceeded .10%, this being a violation of 75 Pa.C.S. § 3731(a)(4). Slingerland filed an omnibus pre-trial motion requesting, inter alia, that the added charge be quashed as being in violation of Pa.R. Crim.P. 225. This motion was denied. Subsequently, a jury found Slingerland not guilty of violating 75 Pa.C.S. § 3731(a)(1) but guilty of driving while his blood alcohol content exceeded .10% in violation of 75 Pa.C.S. § 3731(a)(4). Post-trial motions were denied, and Slingerland was sentenced to pay a fine of three hundred ($300) dollars and undergo imprisonment for not less than thirty (30) days nor more than six (6) months. Slingerland appealed.

He argues on appeal that the second count in the information, which charged him with violating Section 3731(a)(4), should have been quashed because it had not been included in the criminal complaint filed by the prosecuting state

---

1. The complaint also charged various summary offenses not here relevant.

trooper. Pa.R.Crim.P. 225(b)(5) requires "a plain and concise statement of the essential elements of the offense substantially the same as or *cognate* to the offense alleged in the complaint...." (Emphasis added). In *Commonwealth v. Donaldson*, 339 Pa.Super. 237, 239–240, 488 A.2d 639, 640–641 (1985), this Court said that Rule 225(b)(5)

> does not require that the crime charged in the Information be identical to that charged in the Complaint as long as the charge is cognate to the one laid in the Complaint. *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228 (1984); *Commonwealth v. Wilkinson*, 278 Pa.Super. 490, 420 A.2d 647 (1980); *Commonwealth v. El*, 273 Pa.Super. 1, 416 A.2d 1058 (1979); *Commonwealth v. Epps*, 260 Pa.Super. 57, 393 A.2d 1010 (1978).

In *Wilkinson, supra,* we wrote:

> As stated in *Commonwealth v. Cortes*, 182 Pa.Super. 602, 605, 128 A.2d 155, 156 (1956), "The police and other law enforcement officers and justices of the peace who formulate the complaints are not expected to be learned in the law." If the complaint puts the defendant on notice of the substance of the crime for which he is being charged, it is sufficient. 278 Pa.Super. at 498 n. 6, 420 A.2d at 651 n. 6.

The two counts of the formal information prepared by the District Attorney in this case charged appellant with violating different subsections of the same section of the Vehicle Code. Section 3731(a) of the Vehicle Code (75 Pa.C.S. § 3731(a)), provides as follows:

> (a) A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:
> (1) under the influence of alcohol to a degree which renders the person incapable of safe driving;
>
> .    .    .    .    .
>
> (4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

These offenses, we have held, are separate and distinct. See: *Commonwealth v. Fry*, 340 Pa.Super. 445, 490 A.2d

862 (1985). It remains to be determined, however, whether the two offenses are "cognate."

■ The word "cognate" is defined in Webster's Third New International Dictionary (1965) as "related, akin or similar esp. in having the same or common or similar nature, elements, qualities or origin...." Applying this common usage of the word, it would seem that the two subsections of 75 Pa.C.S. § 3731(a) define cognate offenses. Even though the elements of the offenses defined in subsections (a)(1) and (a)(4) are not identical, the offenses are similar in nature and spring from a common concern. The substantive nature of the offenses is clearly the same, namely the operation of a vehicle after alcohol has been consumed to a degree which renders the operator a hazard to others and to himself or herself. Subsection (a)(4) presumes that an operator with a blood alcohol content of 0.10% or greater is unfit to drive, see: *Commonwealth v. Mikulan*, 504 Pa. 244, 249–251, 470 A.2d 1339, 1341–1342 (1983); whereas subsection (a)(1) requires proof that the defendant was, in fact, incapable of safe driving because of an excessive consumption of alcohol. Both subsections, therefore, proscribe the same conduct: driving a motor vehicle while under the influence of alcohol. We conclude, therefore, that the criminal complaint charging Slingerland with driving while under the influence of alcohol to an extent which rendered him incapable of safe driving was sufficient to allow the District Attorney to include in the information the cognate offense of driving while the defendant's blood alcohol content exceeded 0.10%.

■ In a second argument, Slingerland contends that the Commonwealth's evidence was insufficient to show a violation of subsection (a)(4) because it failed to produce medical or other expert testimony which related his blood alcohol level of 0.13% at 1:23 a.m. to the hour of 12:00 a.m., when the accident occurred. A similar argument was made and rejected by this Court in *Commonwealth v. Speights*, 353 Pa.Super. 258, 509 A.2d 1263 (1986). There, the sole evidence of the defendant's blood alcohol level was the result

of a breathalyzer test administered two hours and forty-five minutes after the defendant had operated a motor vehicle and showing an alcoholic content of 0.12%. In response to the same argument made by appellant in the instant case, the Court said:

> [W]e conclude that the Commonwealth is not *required* to offer evidence relating a blood alcohol test result back to the time of a vehicular offense and that the absence of expert testimony relating back a remote test result will not render the test result insufficient evidence upon which the fact-finder *may* convict a defendant of violating subsection 3731(a)(4) of the Vehicle Code.

*Id.*, 353 Pa.Superior Ct. at 265, 509 A.2d at 1266 (emphasis in original). Although Slingerland's blood alcohol content was determined as a result of a blood test rather than by a breathalyzer test, this distinction is of no consequence. It is more significant that Slingerland had been drinking over the course of the entire evening and had not consumed a large quantity of alcohol immediately before operating his motorcycle. Moreover, Slingerland's testimony contained an admission that while operating his motorcycle he had been able to feel the effect of the alcohol which he had consumed. The result of the blood test, when considered in the light of the foregoing evidence, was sufficient to permit the jury to find that appellant had operated his motorcycle in violation of 75 Pa.C.S. § 3731(a)(4).

The judgment of sentence is affirmed.

CIRILLO, President Judge, files a dissenting opinion.

CIRILLO, President Judge, dissenting:

I dissent. The evidence was insufficient to convict the defendant of operating his motorcycle with a blood-alcohol content of 0.10% or greater in violation of 75 Pa.C.S. § 3731(a)(4). The Commonwealth offered no evidence to demonstrate how the defendant's recorded blood-alcohol level of 0.13% an hour and a half after his accident translated into a level of 0.10% or greater at the time he was driving. Without expert testimony relating the 0.13 figure

back to the time of vehicle operation, the jury did not have sufficient factual information to determine that the defendant's blood-alcohol level was over the statutory limit when he drove. Accordingly, I would reverse the conviction and discharge the defendant.

The jury acquitted the defendant of violating § 3731(a)(1) of the Vehicle Code (driving under the influence of alcohol to a degree which renders the person incapable of safe driving), and convicted him of violating § 3731(a)(4) (driving while the amount of alcohol by weight in the blood of the person is 0.10% or greater). Therefore, the verdict necessarily depended on a finding that the percentage of alcohol in the defendant's blood was 0.10 or greater while he was driving. The only direct evidence of the defendant's blood-alcohol percentage was the results of a test performed on a blood sample taken about an hour and a half after the defendant had ceased to drive; they showed his blood-alcohol level then to be 0.13%.

However, because of the "commonly known fact that the per cent of blood alcohol is not static but varies constantly according to the time elapsing after initial ingestion," *Commonwealth v. Kostra*, 349 Pa.Super. 89, 99–100, 502 A.2d 1287, 1292 (1985) (per Wieand, J.), there was no reliable way for the jury to determine beyond a reasonable doubt from the test results what the defendant's blood-alcohol level was when he drove, or whether that level was 0.10% or greater. Nor did anyone observe whether the defendant at or near the time of the accident exhibited outward symptoms consistent with a certain blood-alcohol level; nor did the defendant's own admission that he drank four or five beers in the approximately four hours before driving provide the jury with a sufficient basis to calculate the defendant's blood-alcohol content when he drove. In short, unaided by expert testimony on the effects of alcohol consumption and its rates of absorption and dissipation in the bloodstream, the jury simply was not competent to decide what the defendant's blood-alcohol level was when he was driving, or

whether it would have been 0.10% or more ninety minutes before it registered at 0.13%.

Indeed, I find it to be self-evident that an uninstructed lay jury cannot calculate a defendant's blood-alcohol level to within a few hundredths of a percentage point based solely on the results of a test of a sample taken a significant period of time after the fact. This Court has recognized that even the simple fact of a specified percentage of alcohol in the blood means nothing to a lay juror absent expert testimony or statutory presumption. *Ackerman v. Delcomico,* 336 Pa.Super. 569, 577, 486 A.2d 410, 414 (1984) (petition for allowance of appeal denied) ("Although the admission of the blood alcohol content has been condoned by this court . . ., we remain skeptical as to the value of this evidence to the jury. Without explanation, the blood alcohol content has little meaning to factfinders and quite possibly great potential for resulting prejudice to the party against whom it is used."); *Commonwealth v. Guiliano,* 274 Pa.Super. 419, 418 A.2d 476 (1980) (only expert witness can give opinion on relation of blood-alcohol percentage to intoxication); *see also Erickson v. Municipality of Anchorage,* 662 P.2d 963, 966 (Alaska Ct.App.1983) (quoting Commentary to A.R.E. 303 at 58–59) (with no expert testimony on effect of .10 blood alcohol percentage on sobriety, that fact meaningless to the average juror). How then can a lay jury be expected to extrapolate a blood-alcohol level back over time, when anyone who has ever attempted the feat knows that it cannot be done with any exactitude without reference to scientific variables that the average layman does not carry around in his head?

If the jury in this case did try to extrapolate the defendant's blood-alcohol level from the tested level of 0.13%, what "commonly known" rates of metabolic absorption and dissipation of alcohol did it employ to make the calculation? I find it incredible to suppose that people are so generally familiar with metabolic rates that without expert testimony they could formulate a conclusion on the matter beyond a reasonable doubt. *See State v. Armstrong,* 236 Kan. 290,

689 P.2d 897 (1984) (peak alcohol level may occur any time from forty to seventy minutes after consumption; thereafter the system eliminates alcohol at a rate of approximately .02% per hour, varying from .006% to .04% per hour; variations arise from defendant's tolerance to alcohol, weight, and food consumption).

In all likelihood, the jury in this case did not attempt any precise mathematical calculations, but simply assumed that the level of alcohol in the defendant's blood was higher when he was driving than when he was tested due to the "commonly known" phenomenon that the body expels alcohol from the bloodstream over time. *See Commonwealth v. Dougherty*, 259 Pa.Super. 88, 393 A.2d 730 (1978). However, the only evidence presented on the point did not support making that assumption in this case; in fact, the evidence contradicted the assumption. According to the defendant, he finished drinking shortly before he began driving, and shortly after that he had his accident; consequently, if we indulge the equally "commonly held" notion that alcohol takes a certain amount of time to be absorbed into the blood, *see Kostra*, the defendant's blood-alcohol level would still have been rising a significant period of time after his accident, and he might have been perfectly within the legal limit while he was driving.

Of course, the jury was free to disbelieve all of the defendant's testimony about the time and amount of his alcohol consumption. *See Commonwealth v. Griscavage*, 336 Pa.Super. 141, 485 A.2d 470 (1984) (petition for allowance of appeal granted). But that still leaves unanswered the crucial question on this appeal: how did the jury determine beyond a reasonable doubt that the defendant's blood-alcohol level was 0.10% or more when he was driving? Obviously, without expert testimony on the issue the only way for the jury to have determined this was to guess, and a conviction based on guess or conjecture cannot stand. *Griscavage; Commonwealth v. Arizini*, 277 Pa.Super. 27, 419 A.2d 643 (1980).

The majority cites *Commonwealth v. Speights*, 353 Pa. Super. 258, 509 A.2d 1263 (1986), for the proposition that

expert testimony is not necessary under § 3731(a)(4) to relate blood-alcohol test results back to the time of operation. The majority's reliance on *Speights* is misplaced for two reasons. First, *Speights* is factually distinguishable; second, its reasoning does not hold up under analysis.

In *Speights*, unlike this case, there was strong contemporaneous evidence that the defendant had been intoxicated while operating his vehicle, allowing the jury to infer that his blood-alcohol level was impermissibly high at the time of operation as well as at the time he took a Breathalyzer test. Thus,

> The arresting officer testified that although appellant's car did not collide with anything, it was swerving from side to side on the road and nearly struck some parked vehicles. Furthermore, the officer stated that appellant ran a red light and did not pull over in response to the officer's having sounded his police car siren. When appellant eventually stopped, the officer observed that appellant had bloodshot eyes and that there was a heavy odor of alcohol emanating from inside appellant's car. In addition, the officer stated that when appellant stepped outside his vehicle, he staggered and almost fell to the ground.

*Speights*, 353 Pa.Superior Ct. at 259–260, 509 A.2d at 1264. Moreover, the Breathalyzer test in *Speights* occurred two hours and forty-five minutes after Speights had stopped driving, and the court concluded that after that much time his blood-alcohol level no doubt would be falling, not rising. Thus,

> if an accused stops drinking 30 to 90 minutes before arrest, the accused's blood alcohol content will probably be falling at the time of arrest....
>
> ... The more remote in time, the more likely that the defendant's blood alcohol content will register lower than it was at the time he was driving.

*Id.*, 353 Pa.Superior Ct. at 264–265, 509 A.2d at 1266–67.

In our case, by contrast, no one observed the defendant driving; the only evidence pertaining to that time period

was the fact that he had an accident, which by itself was not sufficient to relate his elevated blood-alcohol level back to the time of operation. *See Griscavage; Arizini.* Also, there was less time between appellant's drinking and his driving than apparently was the case in *Speights,* i.e., less than thirty minutes elapsed between the time appellant stopped drinking and the time he stopped driving.

This latter distinction leads into the fatal flaws in the *Speights* rationale itself. *Speights* decided, without citing any scientific evidence presented in that case, that alcohol is absorbed into the bloodstream within thirty to ninety minutes of consumption. This "fact" is simply not one which a court of law may decide as a matter of judicial notice. *Cf. Kostra; Dougherty.* Indeed, the lay judges of this Court are no better qualified than lay jurors to determine rates of human metabolism without guidance from an expert on the subject. *Speights'*s "authority" for the thirty-to-ninety-minute criterion was the plurality and concurring opinions in *Schwarzbach v. Dunn,* 252 Pa.Super. 454, 381 A.2d 1295 (1977) (petition for allowance of appeal denied), neither of which themselves cited any authority or evidence for the validity of that criterion. *Cf. Arizini* (Commonwealth presented expert testimony on body's rate of metabolizing alcohol); *Commonwealth v. Hartman,* 179 Pa.Super. 134, 115 A.2d 820 (1955) (similar), *rev'd,* 383 Pa. 461, 119 A.2d 211 (1956). In fact, the plurality opinion in *Schwarzbach* went so far as to state "we regard with skepticism any evidence with attempts to relate back to a blood alcohol level at a time prior to the administering of such a test because such a test is entirely too speculative." 252 Pa.Super. at 462, 381 A.2d at 1299 (dictum) (citing *Hartman,* 179 Pa.Super. 134, 115 A.2d 820 (Ross, J., dissenting)); *accord, Griscavage,* 336 Pa.Superior Ct. at 152 n. 5, 485 A.2d at 476 n. 5; *Couts v. Ghion,* 281 Pa.Super. 135, 421 A.2d 1184 (1980) (plurality opinion) (petition for allowance of appeal denied). How the *Speights* court transformed *Schwarzbach's* "skepticism" about the validity of a relation-back test in a civil case into an endorsement of such a test for

use without expert testimony in a criminal case is a mystery I cannot fathom.

Even assuming arguendo the correctness of *Speights's* judge-made rule that alcohol passes into the bloodstream in thirty to ninety minutes, the *Speights* rationale for adopting that standard does not apply with equal force to all drunk driving cases. *Speights* reasoned generally that an accused benefits rather than suffers from delay in the administering of a blood test because his blood-alcohol content will be falling if he has stopped consuming alcohol thirty to ninety minutes before arrest. Of course, the fallacy of this reasoning is patent. It completely ignores the case where, as here, the testimony is that the accused did *not* stop drinking thirty to ninety minutes before he stopped driving, so that his blood-alcohol level may have continued to rise even after he stopped driving. *Cf. Hartman,* 383 Pa. 461, 119 A.2d 211 (upholding trial court's exclusion of blood-alcohol test results where alcohol may not have been fully effective until forty minutes after defendant stopped driving); *Schwarzbach* (plurality opinion) (expressing skepticism about relation-back of blood-alcohol test results where driver could have consumed large quantity of alcohol shortly before driving); *Commonwealth v. Mattis,* 36 Pa.D. & C.3d 532 (Somerset County 1985) (finding evidence insufficient to convict of driving with blood-alcohol content of 0.10% or greater where no expert testimony relating test results back to time of operation).

The majority's reliance on the additional evidence that Slingerland felt the effect of the alcohol while he was driving is unavailing. This admission is no more consistent with having a blood-alcohol content above .10% than with having one below that level. The jury did not convict Slingerland of driving under the influence of alcohol to a degree rendering him incapable of safe driving, so how he "felt" is relevant only insofar as it helps to fix the percentage of alcohol in his blood at the time he was driving. On that score, it is undeniable that one can "feel" the effects of alcohol before it reaches a level of .10% in the blood. This

piece of evidence, even added to the totality of other evidence in the case, is just as consistent with innocence as it is with guilt; therefore there is insufficient evidence to convict Slingerland of driving with a blood-alcohol level of .10% or over. *See Commonwealth v. Key,* 342 Pa.Super. 31, 492 A.2d 48 (1985); *Commonwealth v. Monville,* 306 Pa.Super. 323, 452 A.2d 747 (1982).

The *Speights* holding that expert testimony is not required to relate a defendant's blood-alcohol level back to the time of operation should be overturned because it will encourage and in many cases necessitate jury speculation. The better rule is that in a prosecution for driving with a blood-alcohol content of 0.10% or greater, expert testimony relating back the results of a remote blood-alcohol test "is indispensable to the prosecution's case" *State v. Carter,* 142 Vt. 588, 592, 458 A.2d 1112, 1115 (1983) (quoting *State v. Rollins,* 141 Vt. 105, 110, 444 A.2d 884, 887 (1982)); *accord, Commonwealth v. Gillingham,* 32 Pa.D. & C.3d 37 (Somerset County 1984).

Because the defendant's conviction was necessarily the result of jury speculation, I would reverse and discharge him from further prosecution.